UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
SAN ANGELO DIVISION

| | |
|---|---|
| ODI MUHAISEN,<br><br>*Petitioner,*<br><br>v.<br><br>KRISTI NOEM<br>in her official capacity as Secretary of the Department of Homeland Security<br><br>PAMELA BONDI<br>in her official capacity as Attorney General<br><br>TODD LYONS<br>in his official capacity as Acting Director of Immigration and Customs Enforcement<br><br>JOSHUA JOHNSON<br>in his official capacity as Acting Director of Immigration and Customs Enforcement's Enforcement and Removal Operations Dallas Field Office<br><br>PHILLIP VALDEZ<br>In his official capacity as the Warden of the Eden Detention Center<br><br>*Respondents.* | Civil Action No. 6:25-cv-00063<br><br>**Petition for Writ of Habeas Corpus**<br><br>**Oral Argument Requested** |

**VERIFIED PETITION FOR WRIT OF HABEAS CORPUS AND COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

## INTRODUCTION

1. Odi Muhaisen ("Petitioner"), by and through undersigned counsel, files this verified petition for a writ of habeas corpus. Petitioner is protected from deportation by the Deferred Enforced Departure ("DED"), a federal program that protects certain individuals from the initiation of removal proceedings. However, the U.S. Immigration and Customs Enforcement ("ICE") directly violated the DED, detained Petitioner and subjected him to removal. There was no legal justification for his initial arrest, nor does there exist a valid basis for his continued detention. Thus, the federal detention of Petitioner is unlawful and without due process of law. Therefore, Petitioner urges this Court to grant its petition for his release and grant a temporary restraining order to enjoin Respondents from unlawfully removing his from the United States.

## JURISDICTION

2. This petition arises under the Fifth Amendment to the United States Constitution; the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*

3. The Court has subject-matter jurisdiction under the Suspension Clause, U.S. Const. art. I § 9 cl. 2 (habeas corpus), 28 U.S.C. § 2241 (same), 28 U.S.C. § 1331 (federal question), and 5 U.S.C. § 702 (Administrative Procedure Act). Under 28 U.S.C. § 1651 (All Writs Act) and 28 U.S.C. § 2201 (Declaratory Judgment Act), the Court has remedial authority and jurisdiction to order the relief that Petitioner seeks.

## VENUE

4. Venue is proper in this district pursuant to 28 U.S.C. § 2241 and 28 U.S.C. § 1391 because Petitioner is detained in the Eden Detention Center in Eden, Texas (Concho County), which is within the Northern District of Texas, San Angelo Division.

## PARTIES

5. Petitioner Odi Muhaisen is a 34-year-old Palestinian refugee currently under DED protection. He is a law-abiding individual with no criminal history. Despite possessing a valid work permit and a REAL ID driver's license, he was unlawfully detained by ICE on July 5, 2025, and is currently detained at the Eden Detention Center in Eden, Texas.

6. Respondent Kristi Noem: Named in her official capacity as the Secretary of the Department of Homeland Security ("DHS"). She is responsible for administering immigration laws pursuant to 8 U.S.C. § 1103(a) and is legally responsible for efforts to confine and remove Petitioner. Address: U.S. Department of Homeland Security, Office of the General Counsel, 2707 Martin Luther King Jr. Ave. SE, Washington, DC 20528-0485.

7. Respondent Pamela Bondi: Named in her official capacity as Attorney General of the United States. She is responsible for the administration of immigration laws pursuant to 8 U.S.C. § 1103(g) and is a custodian of Petitioner. Address: U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001.

8. Respondent Todd Lyons: Named in his official capacity as Acting Director of ICE. He is responsible for the administration and enforcement of immigration laws and for pursuing efforts to remove and confine Petitioner. Address: ICE, Office of the Principal Legal Advisor, 500 12th St. SW, Mail Stop 5900, Washington, DC 20536-590.

9. Respondent Josh Johnson: Named in his official capacity as Acting Director of the ICE Enforcement & Removal Operations ("ERO") Dallas Field Office. He is responsible for the administration of immigration laws and the institution of removal proceedings within North Texas, where Petitioner is confined. Address: 8101 North Stemmons Freeway, Dallas, Texas 75247.

10. Respondent Phillip Valdez: Named in his official capacity as the Warden of Eden Detention Center. Respondent Valdez has immediate physical custody of Petitioner pursuant to the facility's contract with ICE to detain noncitizens and is a legal custodian of Petitioner. Address: 702 E. Broadway St, Eden, TX 76837.

## FACTS

11. Petitioner Odi Muhaisen was born on September 26, 1990. He is registered with the United Nations Relief and Works Agency for Palestine Refugees in the Near East ("UNRWA"), an agency established by the UN General Assembly to provide humanitarian assistance to Palestinians who lost their homeland. Despite significant challenges, he graduated from Hashemite University with a bachelor's degree in accounting in 2012 and an MBA from Strayer University in 2020.

12. On March 9, 2020, Petitioner was admitted to the United States on a nonimmigrant visitor visa and then obtained an F-1 student visa to further his education. Petitioner's F-1 status was terminated on September 27, 2024, after he decided to take a temporary break from his studies.

13. Petitioner has no criminal history throughout his entire stay in the United States.

14. On February 14, 2024, President Biden issued a memorandum on DED for Palestinians who were present in the United States on Feb. 14, 2024. *Deferred Enforced Departure for Certain Palestinians*, 89 FR 12743 (Fed. 14, 2024).

15. DED is a federal program based on the President's executive power that protects certain immigrants from deportation due to national interest. The U.S. Citizenship and Immigration Services ("USCIS") explains that:

"DED is in the president's discretion to authorize as part of his constitutional power to conduct foreign relations. Although DED is not a specific immigration status, individuals covered by DED are not subject to removal from the United States for a designated period of time." https://www.uscis.gov/humanitarian/deferred-enforced-departure

16.    In his directive, President Biden stated that it was in the United States' foreign policy interest to defer the removal of Palestinians in the United States for 18 months unless they 1) have voluntarily returned to the Palestinian territories, 2) have not continuously resided in the United States, 3) inadmissible under 8 U.S.C. § 1182 (a)(3) or deportable under 8 U.S.C. § 1227 (a)(4), 4) have been convicted for any felony or two or more misdemeanors or any crime under the criteria of § 1158 (b)(2)(A) 5) subject to extradition, 6) whose presence in the United States is not the best interest determined by DHS, or 7) whose presence in the United States has serious adverse foreign policy consequences determined by the Secretary of State on reasonable ground. *Id.*

17.    President Biden's directive also directs issuance of employment authorizations to Palestinians under this DED protection. *Id.*

18.    This DED directive remains valid and is currently published on USCIS's website, which clearly states that Palestinians' DED protection remains valid through August 13, 2025. https://www.uscis.gov/humanitarian/deferred-enforced-departure/ded-covered-population-palestinians

19.    Petitioner is subject to DED protection. He continuously resided in the Untied States since DED was announced, he has no criminal record that would subject him to removal or extradition, and neither the DHS or the Secretary of State have determined that his presence was against the interest of the United States.

20. There is no formal application for DED, however, Petition has proof of DED protection through his Employment Authorization Document ("EAD") card that lists his immigration status as "A11", corresponding to his DED status.

21. Petitioner can legally work in the Untied States and hhis previous positions at Senior Auditor–demonstrate his supporting nature and leadership. Throughout his career, he has worked hard to improve his client's satisfaction with the service and has led teams with a commitment to accuracy and integrity.

22. Petitioner is an active member of his community, who supports his neighbors and aids those in need. Martha Moreno, a close friend and a single mother of three children, attests to his caring and supportive nature. After she lost her mother, Petitioner was one of the few people who checked on her regularly, helping her with groceries and bringing donuts for her children. She testifies to his reputation for helping his neighbors repair their cars and carry their heavy items.

*Mr. Muhaisen's Arrest and Continued Detention*

23. On July 5, 2025, while visiting a friend in San Angelo, Texas, Petitioner was stopped by a Sherrif's Deputy for allegedly driving six miles over the speed limit.

24. The deputy requested Petitioner's driver's license and told him he would check its validity and then issue him a warning. Petitioner presented his valid REAL ID compliant driver's license and waited 20-25 minutes in his vehicle.

25. When the Deputy returned, he ordered Petitioner to exit the vehicle as he would be conducting a search. Petitioner exited the vehicle and was immediately placed in handcuffs, but no search of the vehicle was conducted.

26. The Deputy told Petitioner that he was detained, and he had contacted ICE to pick him up. Petitioner was surprised and explained that he was on DED and got his attorney on the phone to explain DED to the Deputy. Petitioner's attorney spoke directly with the deputy confirming Petitioner's DED status.

27. The Deputy also reviewed the Petitioner's valid EAD card in his wallet, which lists Petitioner's status category as "A11", demonstrating his DED status.

28. When ICE agents arrived, Petitioner presented his EAD card to them. However, ICE agents disregarded Petitioner's proof of DED protection and told Petitioner to find a good attorney and fight his case in court.

29. It is unclear on what basis ICE is currently detaining Petitioner as his detention directly violates DED.

30. On July 9, 2025, ICE filed the Notice to Appear ("NTA"). The NTA alleges, in part, that Petitioner was "convicted of a crime of violence for which a sentence of more than one year imprisonment was or could have been imposed, pursuant to 8 C.F.R. 214.1 (g)."

31. Petitioner has no criminal record and has not been charged with any crime. The allegation on the NTA is entirely baseless. There was no legal justification for his initial arrest, nor does there exist a valid basis for his continued detention.

32. On July 14, 2025, Petitioner's counsel filed motions to the Immigration Court along with clear evidence of Petitioner's DED status. Those motions sought custody redetermination and termination of the case.

33. The Immigration Court Practice Manual, Chapter 9.3(d) Bond Proceedings requires that "the Immigration Court schedules the [bond] hearing for the earliest possible date." Normally bond hearings are scheduled within three - seven days of a Petitioner's bond request.

Petitioner's bond hearing was scheduled after 15 days on July 29th and a motion filed to expedite it was denied.

34. ICE's refusal to follow the law after provision of clear evidence, fabrication of criminal charges and the Immigration Court's irregular practice strongly indicate that further pursuing administrative relief would be futile.

## CAUSES OF ACTION

### COUNT ONE
*Violation of the Administrative Procedure Act (APA)  5 U.S.C. § 706*

35. Petitioner realleges the foregoing paragraphs as if set forth fully herein.

36. Petitioner remains an individual under the protection the DED. He is not subject to removal proceedings.

37. Respondents' action directly violated the DED, a valid presidential directive that is recognized and must be followed by Respondents. Respondents failed to provide any cause to justify their refusal to comply with the law.

38. Thus, Respondents' action against Petitioner was arbitrary, capricious and an abuse of discretion, and contrary to the DED privilege warranted by law. Respondents also failed to follow its own procedure and precedents regarding individuals under DED protection.

39. Thus, Respondents' action violated the APA and this Court should set aside the action that subjected Petitioner to detention and removal proceeding.

### COUNT TWO
**Violation of Procedural Due Process under the Fifth Amendment of the U.S. Constitution**

40. Petitioner realleges the foregoing paragraphs as if set forth fully herein.

41. Procedural due process requires that the government be constrained before acting in a way that deprives individuals of liberty and property interests protected under the Due Process Clause of the Fifth Amendment. One of the first inquiries in any procedural due process violation is whether the plaintiff has a protected property or liberty interest, and if so, the extent or scope of that interest. *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 569-70 (1972).

42. Here, a legitimate claim of a protected property interest exists by virtue of the promise made by the United States government to Odi that he would not be deported or placed in removal proceedings as long as he adhered to the terms of the DED. When an existing framework established by the government provide individuals with benefits, a property right to those benefits exists. *Id*. at 577 ("A legitimate claim of entitlement is created 'and [its] dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'").

43. Although the DED is temporary and discretionary, any administrative stay of removal, whether ordered by ICE or the U.S. President, is not unfettered and is constrained by the rules and criteria on which DED and the Order of Supervision are based. These constraints further support Petitioner's claim of a protected property interest. *Nozzi v. Housing Authority of City of Los Angeles*, 806 F.3d 1178, 1190-91 (9th Cir. 2015).

44. Procedural due process imposes constraints on governmental decisions that deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment. *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). Courts employ the *Eldridge* test when an alien's due process liberty interests are at stake. This

test considers three factors: (1) The private interest affected by the official action; (2) The risk of erroneous deprivation of that interest through the procedures used; (3) The government's interest. *Id*.

45. It requires courts to balance the affected interests to determine whether the administrative procedures provided are constitutionally sufficient.

46. Petitioner unquestionably meets all the criteria for DED and therefore should not have been arrested or detained. Respondents, having knowledge that Petitioner met the criteria for DED, violated his procedural due process rights by arresting and detaining him.

47. Petitioner's interest affected by Respondents' actions is profound—his physical liberty. He was arrested and is being unlawfully detained, despite having committed no crime and being neither a flight risk nor a danger to public safety or national security. *Matter of Patel*, 15 I. & N. Dec. 666, 666 (BIA 1976) ("An alien generally is and should not be detained or required to post bond except on a finding that they are a threat to national security, or that they are a poor bail risk."). Therefore, at best, the government's interest in his continued detention is minimal.

48. Under the *Eldridge* test, Petitioner's significant liberty interest far outweighs the government's minor interest in his continued detention. He has met the specific criteria for the DED program outlined by DHS, has been found to pose no risk to public safety or national security, and has been granted deferred action under that framework. Petitioner received no due process before his arrest and detention, as he was denied both notice and a hearing.

49. Again, under the *Eldridge* test, Petitioner's significant liberty interest outweighs the government's minor interest in his continued detention. He has DED and poses no risk to

public safety or national security. Petitioner received no due process before his arrest and detention, as he was denied both notice and a hearing.

50. For all these reasons, Petitioner's detention violates the procedural due process rights guaranteed by the Fifth Amendment and the Due Process Clause.

## COUNT THREE
## FIFTH AMENDMENT – SUBSTANTIVE DUE PROCESS

51. Mr. Muhaisen repeats and incorporates by reference each and every allegation contained in the preceding paragraphs as if fully set forth herein.

52. His continued detention violates his right to substantive due process by depriving him of the core liberty interest in freedom from detention and bodily restraint.

53. Aliens physically present in the United States are guaranteed the protections of the Due Process Clause of the Fifth Amendment. (*Zadvydas v. Davis*, 533 U.S. 678, 693 (2001): "The Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."; *Mathews v. Diaz*, 426 U.S. 67, 77 (1976): "There are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons from deprivation of life, liberty, or property without due process of law.")

54. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Due Process Clause protects. (*Zadvydas,* 533 U.S. at 690.) Any deprivation of this fundamental liberty interest must be accompanied not only by adequate procedural protections, but also by a "sufficiently strong special justification" to outweigh the significant deprivation of liberty. *(Id.*; see also *Phan v. Reno*, 56 F. Supp. 2d 1149, 1154 (W.D. Wash. 1999) (*citing Reno v. Flores*, 507 U.S. 292, 301-02 (1993)).)

55. Petitioner is a Palestinian who abides by the law and has no criminal record. His deportation is deferred pursuant to DED. He relied on the government's promise that he would not be placed in removal proceedings. Accordingly, Petitioner's detention is indefensible, punishing an alien for exercising a privilege that the government told him was available, and depriving Petitioner of his constitutional right to due process.

56. Due process permits the government to restrain an individual's liberty only where the government's justification for such restraint bears a "reasonable relation" to permissible purposes. *Jackson v. Indiana*, 405 U.S. 715, 738 (1972); *see also Foucha v. Louisiana*, 504 U.S. 71, 79 (1992); *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). In the immigration context, those purposes are "ensuring the appearance of [noncitizens] at future immigration proceedings and preventing danger to the community." *Zadvydas*, 533 U.S. at 690 (citations omitted). Those substantive limitations on detention intertwine closely with procedural due process protections. *Foucha*, 504 U.S. 78–80.

57. Here, the government had allowed Petitioner to be at liberty, in the public interest, under DED protection. It cannot now detain him, or cause his re-detention, for putative immigration enforcement—without first proving through individualized and fair hearings before this Court why such action is now necessary to prevent danger to the community or risk of flight. *See, e.g., Ragbir*, 2018 U.S. Dist. LEXIS 13939, *6–7 7; *D'Alessandro*, 628 F. Supp. 2d at 401–02; *Lopez*, 2018 U.S. Dist. LEXIS 214163, *8–9; *Bonitto*, 547 F. Supp. 2d at 757–58; *Nguyen*, 108 F. Supp. 2d at 1262; 8 C.F.R. § 214.4. *See also Saravia*, 280 F. Supp. 3d at 1200–06; *Rombot*, 296 F. Supp. 3d at 386–89; *Matter of Sugay*, 17 I. & N. Dec. at 640 (BIA 1981).

58. The Constitution establishes due process rights for "all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

59. The government's detention of Petitioner is unjustified. The government has not demonstrated that Petitioner—who has no criminal history and has close ties in his community—needs to be detained. *See Zadvydas*, 533 U.S. at 690 (finding immigration detention must further the twin goals of (1) ensuring the noncitizen's appearance during removal proceedings and (2) preventing danger to the community). There is no credible argument that Petitioner cannot be safely released back to his community.

60. Petitioner's detention is also punitive and bears no "reasonable relation" to any legitimate purpose for detaining him. *Jackson v. Indiana*, 406 U.S. 715, 738 (1972) ("nature and duration" of civil confinement must "bear some reasonable relation to the purpose for which the individuals is committed"); *Zadvydas*, 533 U.S. at 690 (finding immigration detention is civil and thus ostensibly "nonpunitive in purpose and effect"). His "detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons." *Demore v. Kim*, 538 U.S. 510, 532-33 (2003) (Kennedy, J., concurring).

61. Petitioner's arrest and detention violate due process limitations on civil detention because they are designed to punish him for driving through the wrong neighborhood.

62. For all these reasons, Petitioner's detention violates his substantive due process rights.

## COUNT FOUR
*Release on Bail Pending Adjudication*

63. Petitioner repeats and re-alleges the allegations contained in the preceding paragraphs of this Complaint-Petition as if fully set forth herein.

64. Federal courts sitting in habeas possess the "inherent power to release the petitioner pending determination of the merits." *Savino v. Souza*, 453 F. Supp. 3d 441, 454 (D. Mass. 2020) (*quoting Woodcock v. Donnelly*, 470 F.2d 93, 94 (1st Cir. 1972) (per curiam)); *see also Da Graca v. Souza*, 991 F.3d 60 (1st Cir. 2021). Federal courts "have the same inherent authority to admit habeas petitioners to bail in the immigration context as they do in the criminal habeas case." *Id.* (*quoting Mapp v. Reno*, 241 F.3d 221, 223 (2d Cir. 2001)). "A court considering bail for a habeas petitioner must inquire into whether the habeas petition raise[s] substantial claims and [whether] extraordinary circumstances exist[ ] that make the grant of bail necessary to make the habeas remedy effective." *Id.* (*quoting Mapp*, 241 F.3d at 230) (cleaned up).

65. This petition raises substantial constitutional and statutory claims challenging Petitioner's retaliatory detention. Furthermore, extraordinary circumstances exist that make Petitioner's release essential for the remedy to be effective.

66. Finally, Petitioner's confinement in Eden, Texas prevents him from adequately litigating his removal proceedings by impeding his access to counsel and evidence located within the State of Illinois.

## PRAYER FOR RELIEF

67. **WHEREFORE**, Petitioner respectfully requests that this Honorable Court:

    A. Assume jurisdiction over this matter;

    B. Issue a Writ of Habeas Corpus requiring Respondents to release Petitioner forthwith;

    C. Declare that Respondents' actions in requiring their summary removal violated Petitioner's rights under the Fifth Amendment, the INA, and/or the Suspension

Clause—and remedy those violations and prevent further injury by enjoining Respondents from removing him or causing his removal until his removal proceedings are fairly and finally adjudicated and he have had a fair opportunity and due process;

      D.     Issue an injunction ordering Respondents not to arrest or detain Petitioner, on the basis of the conduct described herein; Declare that re-detention by, or caused by, Respondents/Defendants would violate Petitioner's rights under the Fifth Amendment, and/or their rights under the INA and its implementing regulations, and prevent those injuries by enjoining Respondents/Defendants from re-detaining them, or causing their re-detention, without first proving through individualized fair hearings before this Court why re-detention is necessary to prevent danger to the community or flight from immigration enforcement;

      E.     Award reasonable attorneys' fees and costs to Petitioner; and

      F.     Grant such other and further relief as is just and equitable.

Respectfully Submitted,

By:    /s/Marwa Elbially

Marwa Elbially, Esq.
ELBIALLY LAW OFFICE, PLLC
704 East 15th Street, Suite 204
Plano, TX 75074
T: 972.423.7330
E: info@elbiallylaw.com
TX Bar No. 24090089